IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| FREEDOM PATENTS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ON SEMICONDUCTOR CORPORATION and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC D/B/A ONSEMI,<br><br>    Defendants. | CIVIL ACTION NO. 4:25-cv-1175<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Freedom Patents LLC ("Freedom Patents" or "Plaintiff") files this original complaint against Defendants ON Semiconductor Corporation and Semiconductor Components Industries, LLC d/b/a onsemi (collectively, "Onsemi" or "Defendants"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

**PARTIES**

1. Freedom Patents is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 2325 Oak Alley, Tyler, Texas, 75703.

2. ON Semiconductor Corporation is a company duly organized and existing under the laws of Delaware. ON Semiconductor Corporation may be served through its registered agent The Corporation Trust Company at Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

3. Semiconductor Components Industries, LLC d/b/a onsemi is a company duly organized and existing under the laws of Delaware.  Semiconductor Components Industries, LLC

d/b/a onsemi may be served through its registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

4. Semiconductor Components Industries, LLC d/b/a onsemi is a wholly-owned subsidiary of ON Semiconductor Corporation.[1]

5. The Defendants identified in paragraphs 2-4 above (collectively, "Onsemi") are companies which together have been one of the country's largest manufacturers of integrated circuits for communications. Onsemi provides "intelligent power and intelligent sensing solutions with a primary focus towards automotive and industrial markets to help our customers solve challenging problems and create cutting-edge products for a better future."[2]

6. The Onsemi Defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and/or using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular.

7. The Onsemi Defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

8. The Onsemi Defendants named above and their affiliates regularly contract with customers regarding products made for or on behalf of those customers.

9. Thus, the Onsemi Defendants named above and their affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

---

[1] Onsemi 2024 Annual Report at 4, https://investor.onsemi.com/static-files/2ae68854-fbb0-4d8b-b080-cee5a33e8b93

[2] *See id.* at 5.

10. The parties to this action are properly joined under 35 U.S.C. § 299 because the right to relief asserted against Defendants jointly and severally arises out of the same series of transactions or occurrences relating to the making and using of the same products or processes, including wireless electronics and related processes bearing at least the onsemi brand or that are otherwise made for use with services provided by Onsemi. Additionally, questions of fact common to all defendants will arise in this action.

## JURISDICTION AND VENUE

11. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

12. This Court has personal jurisdiction over Onsemi pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Onsemi has done and continues to do business in Texas; and (ii) Onsemi has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein; and (iii) Onsemi is registered to do business in Texas.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Venue is further proper because Onsemi has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this

district.  Onsemi has regular and established places of business in this district, including at least at 505 Millennium Drive, Allen, Texas, 75013.

## BACKGROUND

14. The patents-in-suit generally relate to improvements in wireless communication technology that allow users to communicate over a wireless network.  In particular, the patents are directed to methods and systems for selecting antennas in multiple-input, multiple-output (MIMO) wireless networks.

15. The technology of the patents-in-suit was developed by engineers at the Mitsubishi Electric Research Laboratories (MERL), which is the North American arm of Mitsubishi Electric.  MERL was founded in 1991 in Cambridge, Massachusetts, and has been known for its focus on innovation and long-range research.[3]  From its beginning, MERL was focused on pioneering new technologies in various industries, including computer graphics, digital communication, medical imaging, transportation etc.[4]  In the early 2000s, for example, "MERL focused on standardization and developments of new emerging technologies," such as "antenna selection, channel equalization, efficient channel state estimation, and Orthogonal Frequency Division Multiplexing (OFDM)."[5]

16. The inventions disclosed in the patents-in-suit have been cited during patent prosecution multiple times by electronics companies, including Apple, Broadcom, Cisco, Ericsson, Fujitsu, Hewlett Packard, Hitachi, Huawei, Intel, Kyocera, LG Electronics, Marvell,

---

[3] *See* https://www.merl.com/company/history.

[4] *See* https://www.merl.com/public/MERL-30Years.pdf.

[5] *Id*. at 22.

MediaTek, Motorola Mobility, Nokia, NTT Docomo, Panasonic, Philips, Qualcomm, Siemens, Samsung, Sharp, Sony, Toshiba, and ZTE.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,284,686

17. On October 9, 2012, United States Patent No. 8,284,686 ("the '686 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Antenna/Beam Selection Training in MIMO Wireless LANS with Different Sounding Frames."

18. Freedom Patents is the owner of the '686 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '686 Patent against infringers, and to collect damages for all relevant times.

19. Onsemi made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Onsemi QT10GU-AX, and other products[6] that comply with the IEEE 802.11ax-2021 standard and implement MIMO Wi-Fi capabilities ("accused products").

---

[6] *See, e.g.,* QT5GU-AX, AT6811, AT6210B, QT6810, QT7810X, QT7860, etc.



### QT10GU-AX

### Baseband Chip DBDC, WiFi 6, 4x4 in 2.4 GHz and 8x8 in 5 GHz

**Product Overview**

For complete documentation, see the data sheet.

The QT10GU-AX is a dualband dual concurrent WiFi 6 baseband chip that supports the 802.11ax/ac/n/a/g/b standards. QT10GU-AX is the first chip in the industry to support the 8x8 with 8 streams and MU-MIMO.

Multi-User MIMO (MU-MIMO) provides an alternative use of the spatial multiplexing that is provided by MIMO. MIMO enables the transmission of multiple independent streams between a transmitter and a receiver with multiple antennas. However, without MU-MIMO, the spatial multiplexing gain is limited by the number of antennas at the client devices (typically one or two), leaving a lot of spatial diversity unused. MU-MIMO extends the MIMO concept to the case with one transmitter and multiple receivers (Downlink MU-MIMO) or to the case with one receiver and multiple transmitters (Uplink MU-MIMO), allowing the full use of the spatial diversity provided by the channel.

**Features**

- Dual-Band Dual-Concurrent Modem- ViSiON Cloud managed- Up to 8x8 5 GHz + 4x4 2.4 GHz
- 5 GHz Modem- Industry's Highest Performance 802.11ax/ac/n/a/g/b WiFi 6 DBDC Baseband Chip- Up to 8 Streams in 8x8 MIMO Configuration
- 2.4 GHz Modem- Support for 802.11ax/n/g/b- Up to 4 Streams in 4x4 MIMO Configuration
- Embedded Processors- DSP Processors- Support for Minimum Burden on the Host CPU
- Hardware Datapath- Layer 2/3 Switching Supported, Including Full HW VLAN Support- Layer 3 Stream Identification

**Benefits**

- World's First 8x8 WiFi 6 Solution

**Source:** QT10GU-AX Product Sheet

20. By doing so, Onsemi has directly infringed (literally and/or under the doctrine of equivalents) at least Claims 1 and 21 of the '686 Patent. *See* Exhibit A. Onsemi's infringement in this regard is ongoing.

21. The Onsemi QT10GU-AX is an exemplary accused product.

22. Onsemi has marketed the benefits of 802.11ax, also known as Wi-Fi 6, to its customers, explaining that "[i]n Wi-Fi 6 network congestion is reduced, increasing the capacity, performance, and reducing power consumption."[7]

23. Onsemi directly infringes the '686 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Onsemi also directly infringes the '686 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed invention after, for example, receiving sounding packets. Onsemi also directly infringes the '686 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (including certification and testing organizations), and/or its customers and end-users. Onsemi contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so. Onsemi conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving sounding packets).

24. Onsemi has had knowledge of the '686 Patent at least as of the date when it was notified of the filing of this action.

---

[7] https://www.onsemi.com/company/news-media/blog/innovation/en-us/understanding-wireless-router-mesh-network-and-transition-to-wi-fi-6

25. Freedom Patents has been damaged as a result of the infringing conduct by Onsemi alleged above. Thus, Onsemi is liable to Freedom Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

26. Freedom Patents has neither made nor sold unmarked articles that practice the '686 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '686 Patent.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,374,096

27. On February 12, 2013, United States Patent No. 8,374,096 ("the '096 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Method for Selecting Antennas and Beams in MIMO Wireless LANs."

28. Freedom Patents is the owner of the '096 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '096 Patent against infringers, and to collect damages for all relevant times.

29. Onsemi used products and/or systems including, for example, its Onsemi QT10GU-AX, and other products[8] that comply with the IEEE 802.11ax-2021 standard and implement MIMO Wi-Fi capabilities ("accused products").

---

[8] *See, e.g.,* QT5GU-AX, AT6811, AT6210B, QT6810, QT7810X, QT7860, etc.



### QT10GU-AX

**Baseband Chip DBDC, WiFi 6, 4x4 in 2.4 GHz and 8x8 in 5 GHz**

#### Product Overview

For complete documentation, see the data sheet.

The QT10GU-AX is a dualband dual concurrent WiFi 6 baseband chip that supports the 802.11ax/ac/n/a/g/b standards. QT10GU-AX is the first chip in the industry to support the 8x8 with 8 streams and MU-MIMO.

Multi-User MIMO (MU-MIMO) provides an alternative use of the spatial multiplexing that is provided by MIMO. MIMO enables the transmission of multiple independent streams between a transmitter and a receiver with multiple antennas. However, without MU-MIMO, the spatial multiplexing gain is limited by the number of antennas at the client devices (typically one or two), leaving a lot of spatial diversity unused. MU-MIMO extends the MIMO concept to the case with one transmitter and multiple receivers (Downlink MU-MIMO) or to the case with one receiver and multiple transmitters (Uplink MU-MIMO), allowing the full use of the spatial diversity provided by the channel.

#### Features

- Dual-Band Dual-Concurrent Modem- ViSiON Cloud managed- Up to 8x8 5 GHz + 4x4 2.4 GHz
- 5 GHz Modem- Industry's Highest Performance 802.11ax/ac/n/a/g/b WiFi 6 DBDC Baseband Chip- Up to 8 Streams in 8x8 MIMO Configuration
- 2.4 GHz Modem- Support for 802.11ax/n/g/b- Up to 4 Streams in 4x4 MIMO Configuration
- Embedded Processors- DSP Processors- Support for Minimum Burden on the Host CPU
- Hardware Datapath- Layer 2/3 Switching Supported, Including Full HW VLAN Support- Layer 3 Stream Identification

#### Benefits

- World's First 8x8 WiFi 6 Solution

**Source:** QT10GU-AX Product Sheet

30. By doing so, Onsemi has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '096 Patent. *See* Exhibit B. Onsemi's infringement in this regard is ongoing.

31. The Onsemi QT10GU-AX is an exemplary accused product.

32. Onsemi has marketed the benefits of 802.11ax, also known as Wi-Fi 6, to its customers, explaining that "[i]n Wi-Fi 6 network congestion is reduced, increasing the capacity, performance, and reducing power consumption."[9]

33. Onsemi directly infringes the '096 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Onsemi also directly infringes the '096 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed invention after, for example, receiving sounding packets. Onsemi also directly infringes the '096 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (including certification and testing organizations), and/or its customers and end-users. Onsemi contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so. Onsemi conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving sounding packets).

34. Onsemi has had knowledge of the '096 Patent at least as of the date when it was notified of the filing of this action.

---

[9] https://www.onsemi.com/company/news-media/blog/innovation/en-us/understanding-wireless-router-mesh-network-and-transition-to-wi-fi-6

35. Freedom Patents has been damaged as a result of the infringing conduct by Onsemi alleged above. Thus, Onsemi is liable to Freedom Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

36. Freedom Patents has neither made nor sold unmarked articles that practice the '096 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '096 Patent.

## COUNT III
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,514,815

37. On August 20, 2013, United States Patent No. 8,514,815 ("the '815 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Training Signals for Selecting Antennas and Beams in MIMO Wireless LANs."

38. Freedom Patents is the owner of the '815 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '815 Patent against infringers, and to collect damages for all relevant times.

39. Onsemi used products and/or systems including, for example, its Onsemi QT10GU-AX, and other products[10] that comply with the IEEE 802.11ax-2021 standard and implement MIMO Wi-Fi capabilities ("accused products").

---

[10] *See, e.g.,* QT5GU-AX, AT6811, AT6210B, QT6810, QT7810X, QT7860, etc.



## QT10GU-AX

### Baseband Chip DBDC, WiFi 6, 4x4 in 2.4 GHz and 8x8 in 5 GHz

**Product Overview**

For complete documentation, see the data sheet.

The QT10GU-AX is a dualband dual concurrent WiFi 6 baseband chip that supports the 802.11ax/ac/n/a/g/b standards. QT10GU-AX is the first chip in the industry to support the 8x8 with 8 streams and MU-MIMO.

Multi-User MIMO (MU-MIMO) provides an alternative use of the spatial multiplexing that is provided by MIMO. MIMO enables the transmission of multiple independent streams between a transmitter and a receiver with multiple antennas. However, without MU-MIMO, the spatial multiplexing gain is limited by the number of antennas at the client devices (typically one or two), leaving a lot of spatial diversity unused. MU-MIMO extends the MIMO concept to the case with one transmitter and multiple receivers (Downlink MU-MIMO) or to the case with one receiver and multiple transmitters (Uplink MU-MIMO), allowing the full use of the spatial diversity provided by the channel.

**Features**
- Dual-Band Dual-Concurrent Modem- ViSiON Cloud managed- Up to 8x8 5 GHz + 4x4 2.4 GHz
- 5 GHz Modem- Industry's Highest Performance 802.11ax/ac/n/a/g/b WiFi 6 DBDC Baseband Chip- Up to 8 Streams in 8x8 MIMO Configuration
- 2.4 GHz Modem- Support for 802.11ax/n/g/b- Up to 4 Streams in 4x4 MIMO Configuration
- Embedded Processors- DSP Processors- Support for Minimum Burden on the Host CPU
- Hardware Datapath- Layer 2/3 Switching Supported, Including Full HW VLAN Support- Layer 3 Stream Identification

**Benefits**
- World's First 8x8 WiFi 6 Solution

**Source:** QT10GU-AX Product Sheet

40. By doing so, Onsemi has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '815 Patent. *See* Exhibit C. Onsemi's infringement in this regard is ongoing.

41. The Onsemi QT10GU-AX is an exemplary accused product.

42. Onsemi has marketed the benefits of 802.11ax, also known as Wi-Fi 6, to its customers, explaining that "[i]n Wi-Fi 6 network congestion is reduced, increasing the capacity, performance, and reducing power consumption."[11]

43. Onsemi directly infringes the '815 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Onsemi also directly infringes the '815 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed invention after, for example, receiving sounding packets. Onsemi also directly infringes the '815 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (including certification and testing organizations), and/or its customers and end-users. Onsemi contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so. Onsemi conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving sounding packets).

44. Onsemi has had knowledge of the '815 Patent at least as of the date when it was notified of the filing of this action.

---

[11] https://www.onsemi.com/company/news-media/blog/innovation/en-us/understanding-wireless-router-mesh-network-and-transition-to-wi-fi-6

45. Freedom Patents has been damaged as a result of the infringing conduct by Onsemi alleged above. Thus, Onsemi is liable to Freedom Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

46. Freedom Patents has neither made nor sold unmarked articles that practice the '815 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '815 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INFRINGEMENT AND PERSONAL JURISDICTION

47. Onsemi has also indirectly infringed the '686 Patent, the '096 Patent, and the '815 Patent by inducing others to directly infringe the '686 Patent, the '096 Patent, and the '815 Patent.

48. Onsemi has induced the end users and/or Onsemi's customers to directly infringe (literally and/or under the doctrine of equivalents) the '686 Patent, the '096 Patent, and the '815 Patent by using the accused products.

49. Onsemi took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes one or more claims of the '686 Patent, the '096 Patent, and the '815 Patent, including, for example, claims 1 and 21 of the '686 Patent, claim 1 of the '096 Patent, and claim 1 of the '815 Patent.

50. Such steps by Onsemi included, among other things, advising or directing customers, end users, and others (including distributors and equipment services entities) to use the accused products in an infringing manner; advertising and promoting the use of the accused

products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner. *See, e.g.,* https://community.onsemi.com/s/article/QCS-Quantenna-Wi-Fi-product-support-and-security-best-practices.

51. Onsemi performed these steps, which constitute joint and/or induced infringement, with the knowledge of the '686 Patent, the '096 Patent, and the '815 Patent and with the knowledge that the induced acts constitute infringement.

52. Onsemi was and is aware that the normal and customary use of the accused products by Onsemi's customers would infringe the '686 Patent, the '096 Patent, and the '815 Patent. Onsemi's inducement is ongoing.

53. Onsemi has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) at least claim 21 of the '686 Patent by importing, selling or offering to sell the accused products.

54. Onsemi has a significant role in placing the accused products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in Texas and elsewhere in the United States.

55. Onsemi purposefully directs or controls the making of accused products and their shipment to the United States, using established distribution channels, for sale in Texas and elsewhere within the United States.

56. Onsemi purposefully directs or controls the sale of the accused products into established United States distribution channels, including sales to nationwide retailers, wholesalers, distributors, manufacturers, and design laboratories (including, but not limited to, Rochester Electronics and Flip Electronics).

57. Onsemi purposefully directs or controls the sale of the accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products will be so sold.

58. Onsemi purposefully places the accused products—whether by itself or through subsidiaries, affiliates, or third parties—into an international supply chain, knowing that the accused products will be sold in the United States, including Texas.  Therefore, Onsemi also facilitates the sale of the accused products in Texas.

59. Onsemi took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringes at least claim 21 of the '686 Patent.

60. Such steps by Onsemi included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to import, sell, or offer to sell the accused products in an infringing manner.

61. Onsemi performed these steps, which constitute induced infringement, with the knowledge of the '686 Patent, the '096 Patent, and the '815 Patent, and with the knowledge that the induced acts would constitute infringement.

62. Onsemi performed such steps in order to profit from the eventual sale of the accused products in the United States.

63. Onsemi's inducement is ongoing.

64. Onsemi has also indirectly infringed by contributing to the infringement of the '686 Patent, the '096 Patent, and the '815 Patent. Onsemi has contributed to the direct infringement of the '686 Patent, the '096 Patent, and the '815 Patent by the end user of the accused products.

65. The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '686 Patent, the '096 Patent, and the '815 Patent, including, for example, claims 1 and 21 of the '686 Patent, claim 1 of the '096 Patent, and claim 1 of the '815 Patent.

66. The special features include, for example, hardware and/or software components especially adapted for transmitting/receiving sounding packets and estimating channel matrices for the selection of antennas in a multiple-input, multiple-output wireless network, used in a manner that infringes the '686 Patent, the '096 Patent, and the '815 Patent.

67. These special features constitute a material part of the invention of one or more of the claims of the '686 Patent, the '096 Patent, and the '815 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

68. Onsemi's contributory infringement is ongoing.

69. Onsemi has had actual knowledge of the '686 Patent, the '096 Patent, and the '815 Patent at least as of the date when it was notified of the filing of this action. Since at least that time, Onsemi has known the scope of the claims of the '686 Patent, the '096 Patent, and the '815 Patent, the products that practice the '686 Patent, the '096 Patent, and the '815 Patent, and that Freedom Patents is the owner of the '686 Patent, the '096 Patent, and the '815 Patent.

70. By the time of trial, Onsemi will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '686 Patent, the '096 Patent, and the '815 Patent.

71. Furthermore, Onsemi has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Freedom Patents' patent rights. *See, e.g.*, M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008).

72. Onsemi's customers have infringed the '686 Patent, the '096 Patent, and the '815 Patent.  Onsemi encouraged its customers' infringement.

73. Onsemi's direct and indirect infringement of the '686 Patent, the '096 Patent, and the '815 Patent has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of Freedom Patents' rights under the patents-in-suit.

74. Freedom Patents has been damaged as a result of Onsemi's infringing conduct alleged above.  Thus, Onsemi is liable to Freedom Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Freedom Patents hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Freedom Patents requests that the Court find in its favor and against Onsemi, and that the Court grant Freedom Patents the following relief:

a. Judgment that one or more claims of the '686 Patent, the '096 Patent, and the '815 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Onsemi and/or all others acting in concert therewith;

  b. A permanent injunction enjoining Onsemi and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '686 Patent, the '096 Patent, and the '815 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '686 Patent, the '096 Patent, and the '815 Patent by such entities;

  c. Judgment that Onsemi account for and pay to Freedom Patents all damages to and costs incurred by Freedom Patents because of Onsemi's infringing activities and other conduct complained of herein, including an award of all increased damages to which Freedom Patents is entitled under 35 U.S.C. § 284;

  d. That Freedom Patents be granted pre-judgment and post-judgment interest on the damages caused by Onsemi's infringing activities and other conduct complained of herein;

  e. That this Court declare this an exceptional case and award Freedom Patents its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

  f. That Freedom Patents be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 24, 2025

Respectfully submitted,

*/s/ Zachariah S. Harrington*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com
Hannah D. Price
Texas Bar No. 24116921
hannah@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com

THE STAFFORD DAVIS FIRM
815 South Broadway Avenue
Tyler, Texas 75701
(903) 593-7000
(903) 705-7369 fax

*Attorneys for Freedom Patents LLC*